UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| PATRICK BREISCH, | ) | |
| --- | --- | --- |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 1:16-cv-00098-SLC |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, *sued as Nancy A.* | ) | |
| *Berryhill, Acting Commissioner of* | ) | |
| *Social Security*,[1] | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Plaintiff Patrick Breisch appeals to the district court from a final decision of the Commissioner of Social Security ("Commissioner") denying his application under the Social Security Act (the "Act") for Supplemental Security Income ("SSI").[2] (DE 1). For the following reasons, the Commissioner's decision will be REVERSED, and the case will be REMANDED to the Commissioner in accordance with this Opinion and Order.

## I. PROCEDURAL HISTORY

Breisch applied for SSI on January 25, 2013, alleging disability as of July 1, 2004. (DE 10 Administrative Record ("AR") 139-44, 156). SSI, however, is not payable prior to the month following the month in which the application was filed. 20 C.F.R. § 416.335. Therefore, the first month in which Breisch was eligible to receive SSI benefits was February 2013.

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security, *see Casey v. Berryhill*, 853 F.3d 322 (7th Cir. Jan. 30, 2017), and thus, she is automatically substituted for Carolyn W. Colvin in this case, *see* Fed. R. Civ. P. 25(d).

[2] All parties have consented to the Magistrate Judge. (DE 13); *see* 28 U.S.C. § 636(c).

The Commissioner denied Breisch's application initially and upon reconsideration, and Breisch requested an administrative hearing. (AR 85-88, 94-101). On September 25, 2014, a hearing was conducted by Administrative Law Judge Terry L. Miller ("the ALJ"), at which Breisch, who was represented by counsel, and Sharon Ringenberg, a vocational expert (the "VE"), testified. (AR 23-45).

On November 20, 2014, the ALJ rendered an unfavorable decision to Breisch, concluding that he was not disabled since January 25, 2013, the date his application was filed, because he could perform a significant number of unskilled, medium-exertional jobs in the economy despite the limitations caused by his impairments.[3] (AR 10-18). The Appeals Council denied Breisch's request for review (AR 1-6), at which point the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. § 416.1481.

Breisch filed a complaint with this Court on March 24, 2016, seeking relief from the Commissioner's final decision. (DE 1). Breisch argues in this appeal: (1) that the ALJ improperly discounted the credibility of his symptom testimony, (2) that the ALJ failed to develop the record regarding his mental condition, and (3) that the residual functional capacity ("RFC") for medium work crafted by the ALJ is not supported by substantial evidence. (DE 14 at 14-22).

---

[3] This was not the first time that Breisch had received an unfavorable decision from the Commissioner, as Breisch had filed a disability application in February 2007, which was denied in a decision by an ALJ in September 2009. (AR 46-62).

## II. FACTUAL BACKGROUND[4]

### A. Background

At the time of the ALJ's decision, Breisch was 58 years old (DE 18, 139); had a tenth or eleventh grade education (AR 30, 176); and had prior work experience as an aerial lineman, fork lift driver, sand blaster, and tire technician (AR 176, 220). Breisch represented in his SSI application that he was seeking disability due to chronic obstructive pulmonary disease (COPD), shortness of breath, asthma, pneumonia, cough, choking, heart problems, and tachycardia. (AR 175).

### B. Breisch's Testimony at the Hearing

At the hearing, Breisch, who was five feet, four inches tall and weighed 128 pounds at the time, testified that he is divorced and lives with a roommate in an apartment; Breisch receives food stamps, and his roommate pays the rent. (AR 28-29). Breisch has two children and seven grandchildren who reside elsewhere. (AR 28-29). He does not have a driver's license; a friend had driven him to the hearing. (AR 30). He was without health insurance at the time, though he had applied for it. (AR 41). His daily routine includes taking medications, watching television, washing dishes, cooking easy meals, and picking up around the house; he sits intermittently between tasks. (AR 37-39). He sleeps only three hours a night because he gets short of breath when lying on his back. (AR 38-29). He can dress and bathe independently. (AR 38). He can grocery shop if someone goes with him; he can walk the aisles if he holds onto the cart. (AR 37-38). His neighbor does his laundry for him. (AR 37). His leisure interests

---

[4] In the interest of brevity, this Opinion recounts only the portions of the 337-page administrative record necessary to the decision.

include collecting coins and building model cars. (AR 38).

When asked about his breathing problems, Breisch stated that he had quit smoking "[a]lmost a year now." (AR 32-33). He stated that he has problems with his breathing "every day, all day," but "[m]ainly in the morning." (AR 33). When he wakes up, he "can barely breathe" and "it takes [him] a while to get back in the rhythm," stating that sometimes he uses his inhalers more than the two times a day as prescribed. (AR 33, 41). Temperature extremes, strong odors, and chemicals aggravate his breathing. (AR 34, 39-40). He does not have a doctor that manages his breathing problems; he just goes to the emergency room for care as needed. (AR 33-34). He had been hospitalized several times for his breathing problems. (AR 34). When asked about his heart difficulties, Breisch described his symptoms as "anxiety" or "fluttering." (AR 34-35). He had not received any treatment for his heart problems. (AR 35).

Breisch estimated that he could walk one-half of a block before needing to rest due to his breathing and his leg muscles. (AR 35). He thought that he could stand for 20 minutes at a time, but then his legs "go numb" and he has to move around. (AR 35). He has no problems with sitting or bending to pick up items from the floor. (AR 35-36). Carrying a gallon of milk makes him short of breath. (AR 35-36). Sometimes his hands go numb, causing him difficulty grasping items. (AR 36). He has difficulty climbing stairs. (AR 36).

*C. Summary of the Relevant Medical Evidence*

In December 2011, Breisch went to the emergency room after he fell at home and hit the left side of his chest against the porch railing. (AR 221-23). He rated his pain as a "10" on a 10-point scale, stating that it hurt to breathe. (AR 221). Upon exam, wheezing was noted

4

throughout the lung fields. (AR 224). An X-ray showed emphysema and an old fracture in his ninth right rib, as well as an irregularity in his left eighth rib indicating that a fracture could not be excluded. (AR 225, 244). He was taking Advair (twice daily), Spiriva (daily), and Albuterol Sulfate (as needed). (AR 222). He was diagnosed with a closed fracture of the left eighth rib, history of fall, chest wall pain, and COPD. (AR 223, 226-27). He was given Prednisone for his wheezing and pain mediation for his rib fracture. (AR 224-25). He was to follow up with his pulmonologist the following week. (AR 224).

In August 2012, Breisch was hospitalized for three days after complaints of left-side pleuritic chest pain and an upper respiratory infection, including sinus pressure and nasal congestion. (AR 245-50). He rated his pain as an "eight," stating that it worsened when coughing and lessened when lying down. (AR 247, 250). He reported a generalized achiness, difficulty breathing, and numbness and tingling in his extremities; he was very weak and needed assistance to get into bed. (AR 250, 252). He also reported difficulty sleeping, nausea with a hacking cough, and loss of consciousness during coughing episodes. (AR 247, 250). An exam revealed a hazy opacity on the right lung and evidence of Systemic Inflammatory Response Syndrome, constituting sepsis. (AR 245). It was noted that he was an active smoker (half a pack a day for 35 years) with a history of COPD and asthma. (AR 247, 250).

During this hospital stay, a physical exam revealed that Breisch was cachectic, chronically ill appearing, with pale, hot skin, and appeared older than his stated age. (AR 253). He had diffuse wheezing throughout all lung fields, with decreased air entry (AR 248); he had very tight bilateral inspiratory and expiratory wheezing, with poor to minimal air movement (AR 251). X-rays showed a three-centimeter area of irregular hazy opacity of the right perihilar

region suggestive of consolidation, as well as calcified granuloma on the left. (AR 281). He also exhibited some irregular laboratory markers, which the physician attributed to poor nutrition. (AR 248, 255, 283-96). Repeat electrocardiograms were abnormal, with prolonged QT intervals. (AR 276-77). He was diagnosed with COPD, sinus tachycardia, pneumonia, sepsis, dry cough, pleuritic pain, hypoxemia, tussive syncope, and hypokalemia, which resolved during his stay. (AR 245, 252). He was started on antibiotics, which improved his sepsis; respiratory treatments; pain and nausea medications; and intravenous fluids. (AR 245, 254-57). During his hospitalization, Breisch received assistance with filing a disability application. (AR 266). Upon discharge, he was instructed to follow up with a primary care physician in two weeks and to obtain a chest X-ray in two months. (AR 245).

In February 2013, Breisch underwent a consultative physical examination by Dr. H.M. Bacchus, Jr., at the request of the state agency. (AR 301-04). Dr. Bacchus noted that Breisch was diagnosed with asthma in 2005, as well as pneumonia, COPD, and heart problems in 2012. (AR 302). Upon exam, Dr. Bacchus observed inspiratory and expiratory wheezing, with "course grading wheezing" in the left upper lobe, no use of accessory respiratory muscles, and "increase AP diameter chest wall decrease air intake." (AR 303). Breisch had a regular heart rate and rhythm without murmurs, rubs, or gallops. (AR 303). Dr. Bacchus further noted that Breisch had a sprained left ankle and reduced range of motion in his cervical and lumbar spine, both knees, and left ankle. (AR 304). Breisch exhibited a depressed mood, monotone speech, and a flat affect. (AR 303). Dr. Bacchus's impression was: "asthma/COPD per history recent PFT 56% initially fev1 86% with [Albuterol]"; dorsal lateral ankle sprain; pneumonia per history; and heart problem per history, tachycardia. (AR 303). Dr. Bacchus concluded: "Claimant appears

6

to maintain the physical functional capability of performing 6-8 hours of general duties with non-continuous sitting, standing, or walking in a safety conscious environment. Claimant has no limitation to work." (AR 303).

In March 2013, Breisch underwent a spirometry examination without bronchodilators at the request of the state agency. (AR 305-06). The examiner noted that Breisch understood the test instructions and exerted maximal effort upon examination. (AR 307). The test results revealed Breisch's best one-second forced expiratory volume was 1.97, which was approximately 70 percent of the normal reference range. (AR 308-09).

In April 2013, Dr. Mangala Hasanadka, a state agency physician, reviewed Breisch's record and concluded that he could lift 25 pounds frequently and 50 pounds occasionally; stand or walk six hours in an eight-hour workday; frequently balance, stoop, kneel, crouch, crawl, and climb ramps and stairs; occasionally climb ladders, ropes, and scaffolds; and must avoid concentrated exposure to extreme cold or heat, wetness, humidity, hazards, fumes, odors, dusts, gases, or poor ventilation. (AR 68-70). One month later, Dr. J.V. Corcoran, another state agency physician, affirmed Dr. Hasanadka's opinion. (AR 79-81).

In February 2014, Breisch saw Jennifer Evans, a nurse practitioner at the Neighborhood Health Clinic, due to shortness of breath with exertion, fatigue, body aches, and an extensive history of respiratory issues. (AR 312). Breisch reported that he had quit smoking in 2011 and had been unable to work since 2005. (AR 312). Ms. Evans noted that Breisch had no income, had never received regular healthcare, and obtained Advair and Albuterol inhalers from his roommate, who had a regular prescription. (AR 312). Upon exam, Breisch appeared much older than his stated age, and his lungs exhibited posterior bilateral lung fields rhonchorous with

7

scattered expiratory and inspiratory wheezes. (AR 312). Ms. Evan's impression was chronic asthma and probable COPD. (AR 312). She encouraged Breisch to use Albuterol and Advair as able, to undergo a chest X-ray once income was verified, and to use the Clinic for regular healthcare; she indicated that disability paperwork would be completed for him after his X-ray. (AR 312). She recommended that Breisch's prescriptions be continued and that he follow up in one month after obtaining the X-ray. (AR 312).

Several days later, Breisch presented to the emergency room, stating that he had fallen on ice and injured his right knee the day before. (AR 315-16). He exhibited exertional shortness of breath and a pulse oximetry of 94 percent on room air. (AR 316). He was unable to walk without assistance and was unable to stand or straighten his leg. (AR 317). He appeared anxious and disheveled. (AR 319). On exam, Breisch had pain and swelling over the right shin; more particularly, his distal right femur, knee, and proximal leg were "exquisitely tender to palpation," with swelling at the medial left knee, which was at 90 degrees and would not extend. (AR 318). X-rays of Breisch's lower body revealed bony demineralization, some patellofemoral osteoarthrosis, degenerative changes to his patellofemoral and right hip joints, and vascular calcifications to his soft tissues. (AR 330-34). Eventually, Breisch's right leg was fully extended and placed in a knee immobilizer. (AR 319). He was diagnosed with a walking disability, knee sprain, fall, contusion of multiple sites, and a knee ligament injury. (AR 319, 328). He was given crutches and pain medication. (AR 319-20).

### III. STANDARD OF REVIEW

Section 405(g) of the Act grants this Court "the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the

Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *see* 42 U.S.C. § 1383(c)(3). The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted). The decision will be reversed only if it is not supported by substantial evidence or if the ALJ applied an erroneous legal standard. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

To determine if substantial evidence exists, the Court reviews the entire administrative record but does not re-weigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for the Commissioner's. *Id.* Rather, if the findings of the Commissioner are supported by substantial evidence, they are conclusive. *Id*. Nonetheless, "substantial evidence" review should not be a simple rubber-stamp of the Commissioner's decision. *Id*.

### IV. ANALYSIS

#### A. *The Law*

Under the Act, a plaintiff is entitled to SSI if he "is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D).

In determining whether Breisch is disabled as defined by the Act, the ALJ conducted the

9

familiar five-step analytical process, which required him to consider the following issues in sequence: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the Commissioner, *see* 20 C.F.R. § 404, Subpt. P, App'x 1; (4) whether the claimant is unable to perform his past work; and (5) whether the claimant is incapable of performing work in the national economy.[5] *See Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001); 20 C.F.R. § 416.920. An affirmative answer leads either to the next step or, on steps three and five, to a finding that the claimant is disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001). A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled. *Id.* The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. *Id.* at 885-86.

## B. *The ALJ's Decision*

On November 20, 2014, the ALJ issued the decision that ultimately became the Commissioner's final decision. (Tr. 10-18). He found at step one of the five-step analysis that Breisch had not engaged in substantial gainful activity since his alleged onset date. (AR 12). At step two, he determined that Breisch had the following severe impairments: COPD and asthma by history. (AR 12). At step three, the ALJ determined that Breisch's impairment or combination of impairments were not severe enough to meet a listing. (AR 13).

Before proceeding to step four, the ALJ determined that Breisch's symptom testimony was "not entirely credible" (AR 15), and assigned the following RFC:

---

[5] Before performing steps four and five, the ALJ must determine the claimant's RFC or what tasks the claimant can do despite his limitations. 20 C.F.R §§ 416.920(e), 416.945. The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of. 20 C.F.R. §§ 416.920(e), 416.945(a)(5).

10

> [T]he claimant has the [RFC] to perform medium work . . . except he has the additional limitations as follows: only occasional climbing ladders, ropes, and scaffolds; frequent climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling; and, needs to avoid concentrated exposure to extreme cold and heat, humidity, wetness, pulmonary irritants (i.e. fumes, odors, dust, gases, poorly ventilated areas, and chemicals) and hazards (i.e. operational control of dangerous moving machinery, and unprotected heights).

(AR 14). At step four, the ALJ concluded that Breisch was unable to perform any of his past relevant work. (AR 17). At step five, based on the assigned RFC and the VE's testimony, the ALJ concluded that a hypothetical individual with Breisch's RFC, experience, and education could perform a significant number of unskilled, medium-exertional jobs in the economy, including laundry worker, dining room attendant, and patient escort. (AR 18). Therefore, Breisch's claim for SSI was denied. (AR 18).

### C. The ALJ's Credibility Determination Will Be Remanded

Breisch argues that the ALJ improperly assessed the credibility of his symptom testimony. Breisch's arguments ultimately have merit, necessitating a remand of the ALJ's decision.

An ALJ's credibility determination concerning a claimant's symptom testimony is entitled to special deference because the ALJ is in the best position to evaluate the credibility of a witness. *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). If an ALJ's determination is grounded in the record and he articulates his analysis of the evidence "at least at a minimum level," *Ray v. Bowen*, 843 F.2d 998, 1002 (7th Cir. 1988) (citation omitted), creating "an accurate and logical bridge between the evidence and the result," *Ribaudo v. Barnhart*, 458 F.3d 580, 584 (7th Cir. 2006) (citation omitted), his determination will be upheld unless it is "patently wrong," *Powers*, 207 F.3d at 435; *see Carradine v. Barnhart*, 360 F.3d 751, 754 (7th Cir. 2004)

(remanding an ALJ's credibility determination because the ALJ's decision was based on "serious errors in reasoning rather than merely the demeanor of the witness").

The ALJ found Breisch's symptom testimony "not entirely credible" based on the objective medical evidence of record. (AR 16). Indeed, "[o]bjective medical evidence . . . is a useful indicator to assist [the Commissioner] in making reasonable conclusions about the intensity and persistence of [the claimant's] symptoms and the effect those symptoms, such as pain, may have on [the claimant's] ability to work . . . ." 20 C.F.R. § 416.929(c)(2). In particular, the ALJ noted that Dr. Bacchus's examination in March 2013 revealed that: (1) Breisch had a regular heart rate and rhythm without murmurs, rubs, or gallops; (2) he had a slight limp and could not hop on his left foot, but overall his muscle strength, tone, and dexterity were normal; and (3) he had inspiratory and expiratory wheezing, but his lungs were clear to auscultation and his $FEV_1$ was 86% with Albuterol. (AR 13, 16 (citing AR 303)). The ALJ also considered that Breisch's spirometry testing in March 2013 revealed a $FEV_1$ of 1.97 pre-bronchodilator, which was 70% of the normal reference range. *See generally* 20 C.F.R. § 404, Subpt. P, App'x 1, § 3.02 (discussing $FEV_1$ values with respect to the listing for pulmonary insufficiency).

Breisch argues, however, that "symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone." *Slayton v. Colvin*, 629 F. App'x 764, 770 (7th Cir. 2015) (citing 20 C.F.R. § 404.1529(c)). Indeed, an ALJ "may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence." *Carradine v. Barnhart*, 360 F.3d 751, 753 (7th Cir. 2004) (citation omitted). An ALJ must additionally consider other statutory factors identified in 20

C.F.R. § 416.929(c)(3), including a claimant's daily activities; the location, duration, frequency and intensity of his symptoms; precipitating and aggravating factors; type, dosage, effectiveness, and side effects of any medication taken to alleviate his symptoms; treatment other than medication; and any other measures used to relieve his symptoms. *See Carradine*, 360 F.3d at 753.

Here, the ALJ acknowledged his duty to consider factors other than medical evidence when assessing Breisch's symptom testimony. (AR 16). That is, after discrediting Breisch's symptom testimony based on the objective medical evidence, the ALJ stated:

> However, in recognition of the fact that an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, the undersigned has also considered other evidence in assessing the credibility of the claimant's statements regarding his limitations and restrictions. Among these factors are the individual's daily activities, the type of treatment the individual receives or has received for relief of pain or other symptoms, and the type dosage, effectiveness and side effects of medications the individual takes or has taken to alleviate pain or other symptoms.

(AR 16 (citing 20 C.F.R. § 404.1529; SSR 96-7p, 1996 WL 374186 (July 2, 1996)). But under SSR 96-7p,[6] "[i]t is . . . not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms." *Zurawski*, 245 F.3d at 887. The ALJ's decision regarding claimant credibility "'must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.'" *Id.* (quoting SSR 96-7p, 1996 WL

---

[6] Social Security Ruling 96-7p was superseded by Social Security Ruling 16-3p in March 2016, *see* SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016), but Social Security Ruling 96-7p governed at the time the ALJ issued his decision, and both parties refer to Social Security Ruling 96-7p in their brief. Accordingly, SSR 96-7p applies to this case.

13

374186, at *2 (July 2, 1996)).

As to daily activities, the ALJ did list Breisch's daily activities earlier in his decision. (AR 15). But these activities are "fairly restricted" (doing dishes, picking up around the house, making microwave meals, bathing and dressing, grocery shopping when accompanied, watching television, collecting coins, and building model cars) "and not of a sort that necessarily undermines or contradicts a claim of disabling [symptoms]." *Zurawski*, 245 F.3d at 887 (citation omitted) (describing washing dishes, helping children prepare for school, doing laundry, and preparing dinner as "fairly restricted" daily activities). "[M]inimal daily activities, such as those in issue, do not establish that a person is capable of engaging in substantial physical activity." *Clifford*, 227 F.3d at 872 (citation omitted); *see Beardsley v. Colvin*, 758 F.3d 834, 838 (7th Cir. 2014) ("[I]t is proper for the Social Security Administration to consider a claimant's daily activities in judging disability, but we have urged caution in equating these activities with the challenges of daily employment in a competitive environment . . . ." (collecting cases)); *Scrogham v. Colvin*, 765 F.3d 685, 700 (7th Cir. 2014) ("[S]poradic performance [of household tasks or work] does not establish that a person is capable of engaging in substantial gainful activity." (second alternation in original) (citation omitted)). As such, the ALJ did not build a logical bridge between Breisch's performance of minimal daily living tasks and an RFC for medium work. *See, e.g.*, *Castaneda v. Colvin*, No. 14 C 7023, 2016 WL 427511, at *2 (N.D. Ill. Feb. 4, 2016) ("Simply put, the ALJ did not build the bridge between the [p]laintiff's ability to perform certain daily activities and its bearing on his ability to work a full-time medium exertional level job.").

The ALJ's failure to recognize that Breisch's daily activities were minimal in nature also

14

taints the ALJ's consideration of the effectiveness of Breisch's medications. (AR 12). Although Breisch testified that his inhalers help his breathing (AR 33), there is no evidence he has been performing any tasks that require more than minimal physical activity, and certainly not tasks equating to medium work. Medium work requires lifting up to 25 pounds frequently and 50 pounds occasionally, standing or walking six hours out of an eight-hour workday, and frequent bending or stooping. SSR 83-10, 1983 WL 31251, at *6 (Jan. 1, 1983).

Additionally, the ALJ indicated that he considered Breisch's lack of regular treatment as a factor in his credibility determination. (AR 16). Breisch argues that the ALJ improperly used this factor against him because he failed to consider what impact his financial status had on his lack of treatment. The Commissioner disagrees, stating that the ALJ merely observed that Breisch never received regular healthcare, that he used his roommate's inhalers, and that he did not have health insurance though he had applied for it. (AR 15). As such, the Commissioner argues that the ALJ did not hold Breisch's inability to afford treatment against him.

As stated earlier, the ALJ failed to articulate his reasoning concerning Breisch's lack of treatment in the context of his credibility determination. Having said that, it is clear from other parts of his decision that the ALJ relied on Breisch's lack of treatment to undercut his symptom testimony. (*See, e.g.*, AR 13 ("no treatment record supporting," "based upon the lack of any treatment," "insufficient medical documentation," 14 ("claimant's lack of treatment history fails to show treatment for the claimant's severe impairments"), 16 ("in light of a dearth of any supportive records")). But in doing so the ALJ erred, as he never inquired into Breisch's reasons for failing to regularly seek healthcare. Instead, he tied Breisch's failure to seek treatment to his credibility without sufficient explanation for doing so. *See Gale v. Berryhill*, No. 1:16-CV-

15

04614, 2017 WL 902878, at *6 (N.D. Ill. Mar. 7, 2017) (remanding credibility determination where the ALJ discredited the claimant based on his non-compliance with medication without ever inquiring into the claimant's reasons for stopping the medication).

To the extent that Breisch could not afford treatment, the Social Security Administration "has expressly endorsed the inability to pay as an explanation excusing a claimant's failure to seek treatment." *Roddy v. Astrue*, 705 F.3d 631, 638 (7th Cir. 2013) (citing SSR 96-7p, 1996 WL 374186, at *8 (July 2, 1996)). That is, "[i]nability to afford treatment may be considered a good reason for non-compliance." *Gale*, 2017 WL 902878, at *6 (citing *Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008)); *Berger v. Astrue*, 516 F.3d 539, 546 (7th Cir. 2008) ("[M]uch of Berger's failure to pursue treatment can be explained by his lack of insurance coverage or money to foot the bills."). As such, an ALJ cannot "rely on an uninsured claimant's sparse treatment history to show that a condition was not serious without exploring why the treatment history was thin." *Pierce v. Colvin*, 739 F.3d 1046, 1050 (7th Cir. 2014) (citations omitted). Therefore, the ALJ erred in discrediting Breisch's symptom testimony "based on his lack of treatment without explaining whether [Breisch's] lack of insurance and financial means excused the deficit." *Motley v. Colvin*, No. 1:15-CV-141-JD, 2016 WL 5349496, at *5 (N.D. Ind. Sept. 26, 2016) (citing *Craft*, 539 F.3d at 679; *Pierce*, 739 F.3d at 1050).

The Court views the ALJ's assessment of Breisch's symptom testimony particularly important given that the distinction between medium and light work is "critical" in this case. *Dimmett v. Colvin*, 816 F.3d 486, 488 (7th Cir. 2016). To explain, Breisch is of advanced age (55 to 59 years), and the VE testified that he has no transferable skills to light or sedentary work. (AR 42). "[A] person of [advanced age] who has no skills transferable to light or sedentary work

is presumptively disabled." *Dimmett*, 816 F.3d at 488 (citations omitted).[7] Therefore, if the ALJ had limited Breisch to light or sedentary work, instead of medium work, he would have been deemed disabled under Grid Rule 202.06.[8] *See* 20 C.F.R. § 404, Subpt. P, App'x 1; Table No. 2, Rule 202.06.

In sum, an ALJ may not discount a claimant's symptom testimony solely on the basis of objective medical evidence. Because the ALJ failed to adequately articulate his consideration of other factors under 20 C.F.R. § 416.929(c)(3), and because it is evident that there are material problems with the ALJ's consideration of such other factors, the case will be remanded so that the ALJ may reassess Breisch's symptom testimony in accordance with SSR 16-3p and build an accurate and logical bridge between the evidence and his conclusion.[9]

## V. CONCLUSION

For the foregoing reasons, the decision of the Commissioner is REVERSED, and the case is REMANDED to the Commissioner for further proceedings in accordance with this Opinion and Order. The Clerk is directed to enter a judgment in favor of Breisch and against the

---

[7] In *Dimmett*, the Seventh Circuit observed the significance under the grid rules of an RFC for medium work versus an RFC for light work, given that the claimant was of advanced age and had no transferable skills. 816 F.3d at 488. The Court ultimately remanded the case, concluding that the ALJ failed to adequately consider the effect of Dimmett's asthma on his COPD, both of which the ALJ considered to be "severe" impairments. *Id*. The Court also took issue with the ALJ's reliance on vocational expert testimony that, like here, identified the jobs of laundry worker and dining room attendant, commenting that these jobs "should have caused alarm bells to ring in the administrative law judge's ears given that he'd instructed the vocational expert that the plaintiff is incapable of performing jobs that would expose him to temperature extremes, humidity, and airborne pollutants." *Id*. at 489.

[8] In fact, the record reflects that in the 2009 decision denying Breisch's prior application, which was written by a different ALJ, Breisch was assigned an RFC for "light work" with additional restrictions of "walk[ing] only short distances at a normal pace" and "no fast paced work." (AR 51-52; *see* AR 43-45).

[9] Because a remand is warranted to reconsider the credibility of Breisch's symptom testimony, the Court need not reach Breisch's remaining arguments.

Commissioner.

SO ORDERED.

Entered this 9th day of August 2017.

/s/ Susan Collins
Susan Collins
United States Magistrate Judge